**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION; AMERICAN ASSOCIATION FOR STATE AND LOCAL HISTORY; ASSOCIATION OF NATIONAL PARK RANGERS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; SOCIETY FOR EXPERIENTIAL GRAPHIC DESIGN; UNION OF CONCERNED SCIENTISTS,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; JESSICA BOWRON, in her official capacity as the Official Exercising the Delegated Authority of the Director,<br><br>*Defendants,* | Civil Action No. 1:26-cv-10877 |

**DECLARATION OF JOY BEASLEY, ASSOCIATE DIRECTOR FOR CULTURAL RESOURCES, PARTNERSHIPS, AND SCIENCE, AND ACTING ASSOCIATE DIRECTOR FOR NATURAL RESOURCE STEWARDSHIP AND SCIENCE**

I, Joy Beasley, declare the following to be true and correct:

1. I am the National Park Service (NPS) Associate Director for Cultural Resources, Partnerships, and Science. I have been the Associate Director for Cultural Resources, Partnerships and Science since late August 2020. Prior to that time, I served in this position in an acting role beginning May 2017. Since April 2025, I have also served as the Acting Associate Director for Natural Resource Stewardship and Science.

1

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. As Associate Director, I oversee programs and offices within the NPS's Washington office and had been assigned to a review team of NPS senior management, representing the Interpretation, Education, and Volunteers Directorate, the Cultural Resources, Partnerships, and Science Directorate, and Natural Resource Stewardship and Science Directorate, as well as representatives from the Department of the Interior Office of Communications and others, that analyzed each System unit and public submission for conformance with the requirements of Secretary's Order ("SO") 3431.

4. The review process occurred on a case-by-case basis. In some cases, interpretive content was found to conform with SO 3431 and no change was recommended. In other cases, content was found not to conform with SO 3431, and the relevant park unit and region was provided notification.

5. After the relevant park unit and region were notified of the non-conformance, the review team would wait for status updates and next steps as they became available from that park unit and regional office. In cases where interpretive material was determined to be non-conforming, park staff would then work to bring the material into conformance. This ordinarily involved the development of replacement material in consultation with the review team. Once the replacement material was developed, and depending on the medium, it would need to be ordered and either printed or fabricated. The Second Declaration of Jessica Bowron, Comptroller exercising the authority of the NPS Director (Second Bowron Declaration), (Doc. 44-2), describes these processes at paragraphs 7

2

through 18. The Comptroller is currently unavailable to provide a third declaration by noon on June 17, 2026, due to official travel to NPS Semiquincentennial events.

6. The NPS has a decentralized structure that houses substantial resources for implementation and reporting in the field. While the Washington office receives and consolidates data provided from the field, the regional offices and park units themselves have the most up-to-date information on the status of individual items determined to be non-conforming. Prior to June 15, 2026, regional offices and park units would provide these status updates on a rolling basis.

7. With respect to actions NPS has taken to comply with the District Court's Memorandum and Order on Plaintiffs' Motion for 5 U.S.C. § 705 Stay or, in the Alternative, Preliminary Injunction ("Injunction Order"), the NPS received the Injunction Order in the evening of June 12, 2026. Later that evening, the Comptroller informed NPS Regional Directors, Deputy Regional Directors, Associate Directors, and Assistant Directors of the Injunction Order and instructed them to halt any further action to implement SO 3431.

8. On Monday June 15, 2026, the Washington office-based review team coordinated with available regional and park staff to obtain additional information on items already reported to the Washington office as having been removed, revised, or replaced pursuant to SO 3431, and to identify obstacles to the restoration of any such interpretative materials, within the Court's 21-day deadline, to their prior state as of May 19, 2025.

9. On Tuesday, June 16, 2026, the same review team coordinated with NPS and Departmental leadership to outline initial restoration plans. The NPS anticipates being able to implement some restorations starting the week of June 22, 2026, but the NPS does not believe it can restore all removed, revised, or replaced items by the Court's current

3

July 3 deadline. This is for reasons previously described in the Second Bowron Declaration as well as the additional obstacles described below. When the review team received the District Court's order dated June 16, 2026 (Doc. No. 47), it pivoted to responding to that order's requests for information.

10. The review team compiled a spreadsheet containing information on each item that has been reported to the Washington office as being removed, revised, or replaced as of June 15, 2026. The spreadsheet lists each of these items and, if currently reported, its park unit, reason for removal, medium, current location, condition, and, if the item has been destroyed, the expected reproduction process. Where specific information has not yet been reported, we note its absence as "TBD," and plan to follow up with the relevant regional or park staff as described below. A copy of this spreadsheet is attached as Exhibit A.

11. Exhibit A includes a listing, based on information available to the review team, of reported removals, revisions, or replacements that occurred as a result of the review process for implementing SO 3431. However, at this time, Exhibit A is unlikely to capture every removal, revision, or replacement that may have been made pursuant to SO 3431. Because the process for developing, printing, and fabricating replacement materials can be time intensive, weeks or months may pass between notification of a park unit of non-conformance and the actual revision or replacement of existing interpretive materials. Thus, in many cases, the review team does not expect interpretive material to have yet been removed, revised, or replaced at this time. But, in other cases, interpretive materials may have been removed, revised, or replaced, but the completion of that process has not yet been reported to the Washington office. The review team has not yet

had time to conduct the necessary inquiries to determine the status of all items that were determined to be in non-conformance, but whose status was not subsequently reported to the Washington office. For these reasons, the spreadsheet attached today as Exhibit A does not yet include an entry for each item that was determined by the review team to be in non-conformance.

12. Given the NPS's structure, as described above, and the time of year, we anticipate that it may be difficult to timely communicate with certain park staff that have knowledge of specific removed, revised, or replaced items. The summer season is the busiest time of year at most parks, with park staff often assigned to visitor-facing positions in remote areas that limit their access to communication technologies. This year in particular, many parks must meet additional demands on staff time to support Semiquincentennial activities. These activities include coordinating intensive special exhibits, displays, interpretive and educational activities, as well as complex commemorative events for America's 250th birthday. Moreover, the NPS anticipates increased visitation to many park units around the Semiquincentennial, which will likely require even more park staff hours be transferred into visitor-facing roles between mid-June and mid-July 2026.

13. Regardless of these constraints, the NPS is currently preparing a data call to request status updates from regional offices and individual park units on all items that were determined non-conforming. The NPS anticipates that the majority of relevant park staff will be able to respond to this request, and it will compile the information received for the Court in time for its second status report required by the Injunction Order, on Wednesday, June 24, 2026. To the extent that relevant park staff cannot respond in this timeframe, or

to the extent that additional follow-up is needed with the park units, the NPS will provide the Court with updated information in its subsequent status reports.

14. Exhibit A includes information regarding interpretive materials at Natchez Trace Parkway that were submitted for review as part of the process to implement SO 3431 and subsequently revised for reasons unrelated to conformance with the SO. Revisions for these materials were determined to be outside the scope of SO 3431 but were made for compliance with separate legal and policy directives on the renaming of the "Gulf of America." However, for full transparency, we have included these materials near the end of the current Exhibit A and listed their reason for removal as out of scope of SO 3431.

15. Exhibit A also includes information regarding interpretive materials at Independence National Historical Park involved in City of Philadelphia v. Burgum et al., No. 2:26cv434 (E.D. Pa.); ECF No. 54, Preliminary Injunction Order, 820 F. Supp. 3d 313 (Feb. 16, 2026). These materials are bolded in the final line of Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

JOY BEASLEY
Digitally signed by JOY BEASLEY
Date: 2026.06.17 11:45:39 -04'00'

Washington, District of Columbia
Dated: June 17, 2026

Joy Beasley

6