**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION et al., | ) ) ) | |
| Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:26-CV-10877-AK |
| UNITED STATES DEPARTMENT OF THE INTERIOR et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL

**ANGEL KELLEY, D.J.**

On June 15, 2026, Defendants filed an Emergency Motion for Stay Pending Appeal, requesting that the Court stay its June 12, 2026, Order ("Injunction Order"), which required Defendants to halt implementation of Secretary Order 3431 ("Secretary's Order") pursuant to 5 U.S.C. § 705. [Dkt. 44]. Plaintiffs opposed the Motion. [Dkt. 48]. For the following reasons, Defendants' Motion for Stay Pending Appeal is **DENIED** and Defendants are further **DIRECTED** to ensure that when the exhibits are reinstalled, they remain available and visible to the public, subject to lawful changes or modifications.

## I.    LEGAL STANDARD

Pursuant to the Federal Rules of Appellate Procedure, a party appealing the entry of a preliminary injunction by the district court may seek a stay of the injunction pending appeal. Fed. R. App. P. 8(a). Ordinarily, the party must first request such relief from the district court before moving for a stay with the court of appeals. Fed. R. App. P. 8(a)(1)(A). A motion for a

stay pending appeal "requires an exercise of the court's equitable discretion." Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co., 527 F. Supp. 3d 40, 58 (D. Mass. 2021) (citing Common Cause R.I. v. Gorbea, 970 F.3d 11, 15-16 (1st Cir. 2020)).  The court must consider the following factors, which are substantially similar to those considered on a motion for preliminary injunction: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent relief; (3) whether issuance of relief will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Respect Me. PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010) (citing Nken v. Holder, 556 U.S. 418 (2009)).  The first factor, likelihood of success on the merits, is the most important element. See Acevedo-García v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir. 2002) (describing likelihood of success as the "sine qua non" for a stay pending appeal). Notably, "[a] stay pending appeal is an 'intrusion into the ordinary processes of administration and judicial review' and relief is not granted as 'a matter of right.'" Rhode Island v. Trump, 155 F.4th 35, 41 (1st Cir. 2025) (quoting New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025)).  The movant "bear[s] the burden of demonstrating that they are entitled to the 'extraordinary' relief that they seek." Id. (quoting Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 68 (1st Cir. 2025)).

## II.      DISCUSSION

As set forth below, the Court determines that Defendants have failed to establish the elements necessary to justify a stay.  Defendants bear the burden of proof and persuasion but have not shown a likelihood of success in challenging the Court's prior analysis nor presented sufficient evidence to establish irreparable harm.  Instead, Defendants largely rehash arguments the Court has already thoroughly considered and rejected, or they advance for the first time new

legal theories in support of dismissal.  Neither provides a basis for the extraordinary relief of a stay.

### A.    Likelihood of Success on the Merits

To establish a likelihood of success on the merits, Defendants must do more than express disagreement with the Court's prior ruling; they must make a *strong* showing that they are likely to prevail on appeal. See Nken, 556 U.S. at 434.  They have not done so here.  As Defendants themselves acknowledge, much of their current Motion simply repackages arguments the Court has already considered and rejected in its Injunction Order. [See Dkt. 44-1 at 4-5 (submitting that Defendants' arguments rest on the same as those "explained in their brief in support of their motion to dismiss and in their brief in opposition to Plaintiffs' motion for a stay or preliminary injunction," and that the present Motion "incorporate[s] [those arguments] by reference")]. Specifically, Defendants reiterate a panoply of arguments that the Secretary's Order is not a final agency action, is not contrary to law, and is not arbitrary or capricious.  Defendants do not identify any intervening authority, overlooked factual matter, or clear error that would call the Court's reasoning into question.  Nor do Defendants engage substantively with the Court's analysis regarding, for example, the inapplicability of United States v. Salerno, 481 U.S. 739 (1987), the variety of factual evidence in the record underlying Plaintiffs' arbitrary-and-capricious claims, or the Court's textual analysis of the Organic Act, Centennial Act, and Omnibus Management Act.  Instead, Defendants largely express disagreement with the Court's conclusions.  Disagreement alone is insufficient to demonstrate a likelihood of success on the merits, and certainly not a strong likelihood of success. See Afr. Cmtys. Together v. Noem, No. 25-CV-13939, 2026 WL 961900, at *1 (D. Mass. Apr. 9, 2026) (denying motion for stay pending appeal where defendants largely "repeat[ed] the arguments they already raised in

3

opposing Plaintiffs' motion"); United States v. Reynoso, 778 F. Supp. 3d 433, 437 (D.P.R. 2025) (same); In re Fin. Oversight & Mgmt. Bd. for P.R., 588 F. Supp. 3d 191, 203 (D.P.R. 2022) (same).

The only new argument on the merits that Defendants advance—raised for the first time in their Motion for Stay—is that Plaintiffs cannot proceed under the Administrative Procedure Act's ("APA") contrary-to-law provision and instead must satisfy the higher standard for an *ultra vires* claim. As a threshold matter, Defendants offer no explanation for why this theory was not raised in their prior briefing. The Court finds it waived at this juncture, as a motion for stay is not a vehicle for presenting new legal theories or issues. Cf. Acevedo-García, 296 F.3d at 18 (declining to consider arguments raised for first time in support of motion for stay pending appeal of preliminary injunction); New Jersey v. Trump, 131 F.4th 27, 43 (1st Cir. 2025). In any event, even if the Court were to consider this new argument on the merits, it is unpersuasive. Plaintiffs do not assert an *ultra vires* challenge to the Secretary's Order, making the requirements for establishing such a claim irrelevant to this case.[1] *Ultra vires* claims arise under the Constitution and are doctrinally distinct from Plaintiffs' APA challenges. See New York v. McMahon, 784 F. Supp. 3d 311, 352 (D. Mass. 2025) (assessing *ultra vires* claim separately and independently from contrary-to-law claim under the APA); cf. Council for Opportunity in Educ. v. U.S. Dep't of Educ., No. 25-CV-03491, 2026 WL 120984, at n.5 (D.D.C. Jan. 16, 2026) (describing statutory jurisdictional limits on APA review as separate from analysis of constitutional *ultra vires* claims). Because Defendants' argument rests on a legal standard that

---

[1] Defendants' argument that Plaintiffs must meet the *ultra vires* standard appears to rely on the assumption that Plaintiffs fail to state a cognizable APA claim, and so Plaintiffs are limited to bringing an *ultra vires* claim. According to Defendants, this is because the Secretary's Order is not a final agency action. However, the Court has concluded that the Secretary's Order is a final agency action subject to review under the APA.

does not govern the claims before the Court, Defendants do not demonstrate a likelihood of success on this ground.  Accordingly, Defendants have not made a sufficiently strong showing under the first stay factor.

### B.    Irreparable Harm

To establish irreparable harm, Defendants bear the burden of demonstrating that, absent a stay, they will suffer irreparable injury that is substantial, certain, and inadequately remedied by monetary damages or later appellate relief. See Nken, 556 U.S. at 434-35.  "[S]peculative and conclusory statement[s]" of future harm do not suffice. New York v. Trump, 133 F.4th at 72. Here, Defendants raise three theories: (1) the Injunction Order hampers government speech by preventing the National Park Service ("NPS") from proffering its preferred narrative at National Parks; (2) implementation of the Injunction Order is practically infeasible and costly; and (3) the Injunction Order conflicts with a recent order issued by the U.S. Court of Appeals for the Third Circuit regarding Independence National Historical Park in Philadelphia, PA, thus subjecting Defendants to inconsistent obligations with respect to that site.  The Court is unpersuaded by these arguments and explains why.

First, as to government speech (setting aside the fact that Defendants never raised this argument in their motion to dismiss nor their opposition to Plaintiffs' request for a preliminary injunction, but once again, raise new arguments for the first time in their Motion for Stay pending appeal), Plaintiffs do not assert any First Amendment claim, making the issue of government speech irrelevant to this action and Defendants' claim of injury unconvincing.  The government-speech doctrine emanates from the First Amendment and operates as a defense to claims alleging that the government violated a plaintiff's free speech rights. See Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009); e.g., Shurtleff v. City of Boston, 596 U.S. 243, 258-

59 (2022) (applying government-speech doctrine to assess whether city's refusal to raise flag constituted viewpoint discrimination under the First Amendment); Satanic Temple, Inc. v. City of Boston, No. 21-CV-10102, 2021 WL 3079868, at *5 (D. Mass. July 21, 2021) (assessing government-speech doctrine in context of First Amendment Establishment Clause claim).  As such, its function is to foreclose a plaintiff's argument that the government must include or provide a particular type of expressive speech.  It does not create a freestanding, substantive governmental right to speech that is insulated from ordinary APA review.

The case Defendants rely on, Pleasant Grove City v. Summum, 555 U.S. 460 (2009), indeed involved a private group's First Amendment challenge alleging that a municipality engaged in viewpoint discrimination by declining to erect the plaintiff's proposed religious monument in a public park.  The Supreme Court held that "the Government's own speech . . . is exempt from First Amendment scrutiny." Id. at 467.  As Justice Alito explained, the doctrine is rooted in a practical concern of burdens on government functioning imposed by *private* interests. Id. at 467-68.  Nothing in Summum suggests that the government's exemption from certain First Amendment claims broadly renders government speech immune from otherwise applicable statutory constraints or APA review. See Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 329-31 & n.9 (1st Cir. 2009) (explaining that, under Summum, government speech may still be limited "by law, regulation, or practice").  As the U.S. District Court for the District of Columbia recently explained, "[t]he government is free to say what it wants," but it still "must abide by the bounds of authority and the procedures that Congress has prescribed, through the APA and otherwise." Drs. for Am. v. OPM, 793 F. Supp. 3d 112, 150 (D.D.C. 2025) (vacating agency directive to remove content regarding gender affirming care and ordering government to restore censored information).  The APA exists precisely to ensure agency accountability under statutory

authority, and the government-speech doctrine does not supplant that framework.

This principle applies with equal force to Plaintiffs' APA claims. The Court has determined that Congress, through the Organic Act, Centennial Act, and Omnibus Management Act, has required the NPS to provide the "highest quality" interpretive materials, which includes telling the full history of this Nation. The NPS has no interest in declining to convey speech that Congress itself has required it to express and that the public has a corresponding right to receive. The federal government cannot disregard congressional directives merely by characterizing its conduct as "speech." Accordingly, Defendants' reliance on the government-speech doctrine does not support a showing of irreparable harm.

Second, as to Defendants' purported practical difficulties in implementing the Court's Injunction Order, the Court is unpersuaded that the task is as infeasible as Defendants describe. Defendants contend that timely compliance would be impossible because certain materials have allegedly been destroyed, and re-fabrication would be expensive, would in some instances require coordination with outside vendors, and would proceed on an uncertain timeline, particularly given that the summer months are the busiest period of the year for many park sites. However, based on the Court's review of Defendants' Status Report, Defendants' arguments are an overstatement, and their evidence does not illustrate a situation where compliance is impossible as opposed to merely burdensome. Pursuant to the Court's Injunction Order, Defendants provided a Status Report with a preliminary list of removed materials. [See Dkts. 47; 49]. The list contains 52 total items.[2] [See Dkt. 49-2]. At least 30 of the identified items are

---

[2] The list includes 5 additional items at Natchez Trace Parkway that were removed only for compliance with Executive Order 14172 ("Restoring Names that Honor American Greatness") rather than the Secretary's Order. The Court does not consider those materials here because they are outside the scope of the Injunction Order.

reported to be in "Ok" condition and remain stored onsite, or otherwise can be replaced from existing surplus inventory, such as for booklets and brochures. [See id.]. Defendants provide no persuasive explanation for why these items cannot be restored immediately. Indeed, Defendants submit that the NPS is "able to implement some restorations starting the week of June 22, 2026." [Dkt. 49-1 ¶ 9]. Another 6 items are reported to be capable of reprinting, including at least 4 that can be reprinted in-house. [See Dkt. 49-2]. While Defendants identify 8 destroyed items that would require external vendors to recreate, Defendants do not clearly establish that doing so would be infeasible within the Court's deadlines or with limited, case-by-case extensions or exemptions.[3] [See id.]. As for cost, Defendants provide estimates for 5 of the discarded or altered exhibits, totaling only $13,300. [See Dkt. 44-2 ¶¶ 10, 18]. This is hardly a financial burden to Defendants and is a small fraction of one percent of the NPS' $3.267 billion discretionary appropriation for fiscal year 2026. [Dkt. 48 at 13 n.4]. Finally, at this stage, the Court acknowledges the apparent good faith compliance efforts that individual NPS park sites and employees have already instituted to meet the deadlines set forth by this Court. Based on Defendants' representations, the Court finds that if Defendants move promptly to restore the interpretive materials, they can meaningfully comply with the Court's Order. Thus, the Court cannot conclude that Defendants face the sort of irreparable injury necessary to justify a stay on this ground.

Finally, the Court is unpersuaded by Defendants' argument that the Injunction Order conflicts with a stay pending appeal issued by the Third Circuit in City of Philadelphia v. Sec'y U.S. Dep't of Interior, No. 26-1348 (3d Cir. Apr. 9, 2026) [Dkt. 39]. That case involved

---

[3] Such case-by-case extensions or exemptions could also address any public safety-related concerns or programming disruptions raised by Defendants. [See Dkt. 44-1 at 13, 15].

different legal claims and different parties.  There, the City of Philadelphia raised contractual, *ultra vires*, and APA claims over Defendants' removal of a slavery exhibit at the President's House at Independence National Historical Park.  The APA claims were brought under the National Underground Network to Freedom Act, 54 U.S.C. §§ 308301-308304, the statute creating Independence National Historical Park, 16 U.S.C. §§ 407m, 407n, and the park's foundation document.  The Third Circuit stayed a portion of the district court's preliminary injunction that required Defendants to reinstall material at the site pending resolution on appeal.  The stay order was not a final adjudication on the merits of the underlying claims, involved different plaintiffs, and raised different legal theories.  As such, that decision does not have any preclusive effect on this matter. See Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010) (explaining that claim preclusion applies "if (1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related"); Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012) (explaining that issue preclusion applies where, among other thing, "the issue was determined by a valid and binding final judgment").  The fact that both cases concern the same interpretive materials at an individual park site does not alter that conclusion.  Defendants may be subject to obligations regarding the same property where those obligations arise from distinct legal violations.  In any event, the Third Circuit's order did not affect that district court's mandate that Defendants preserve the interpretive materials, thereby making the displays available for reinstallation.

Moreover, decisions from the Third Circuit are given persuasive rather than binding effect. Cf. In re Korean Air Lines Disaster of Sep. 1, 1983, 829 F. 2d 1171, 1176 (D.D.C. 1987) ("The federal courts spread across the country owe respect to each other's efforts and should

9

drive to avoid conflicts, but each has an obligation to engage independently in reasoned analysis. Binding precedent for all is set only by the Supreme Court . . . ."); Iverson v. United States, 973 F.3d 843, 847 (8th. Cir. 2020) (noting that two sister circuits had already addressed the legal issue at hand, but that "[t]hese decisions provide persuasive authority only"); Hearring v. Sliwowski, 712 F.3d 275, 282 (6th Cir. 2013) ("[O]ut-of-circuit precedent clearly establishes rights only in 'extraordinary case[s]' when the out-of-circuit decisions 'both point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.'" (quoting Ohio Civil Serv. Emps. Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir. 1988)).  Accordingly, the Court finds that Defendants have not established irreparable harm absent a stay.

## C.    Harm to Other Parties/Public Interest

Finally, the undeniable harm to others and the public interest weigh in favor of maintaining the relief previously ordered with slight modification.  The Court explained at length in its Injunction Order that the harms to Plaintiffs and the broader public, absent preliminary relief, would be not only cognizable but severe, expansive, and irreparable.  As the Court explained, "[t]he [Secretary's] Order erases the history of countless people; alienates communities from public spaces; limits the availability of scientific information relevant to ensuring the long-term preservation of the parks themselves; and impairs the mission of the NPS to preserve the parks 'for the enjoyment, education, and inspiration of this and future generations.'" [Dkt. 41 at 58].  As millions of visitors arrive at the park sites this summer, the harm arising from the continued deprivation of interpretive materials is compounded.  Plaintiffs and the public have already been harmed by Defendants' attempts to censor undeniable and

10

uncomfortable historical and scientific truths through removing interpretive materials. Particularly as the Nation celebrates its first 250 years, the full, honest, and complex history that includes its triumphs, painful chapters, and evolution are even more important. Truthful history belongs to everyone. Restoration now is the only true means to "restore truth and sanity to American history."

Defendants underestimate the public by suggesting that they cannot handle the complicated and uncomfortable, yet undeniable American story. But credit must be given to the public, who are more than capable of being critical thinkers and viewing facts with a realistic lens in confronting America's complete national history. The overwhelming majority of public comments submitted through the QR codes Defendants posted at the park sites denounce the Secretary's Order, instead expressing a desire to learn all sides of history. [See Dkt. 28 ¶ 67]. These facts give further reason to celebrate our 250 years. An informed public is better equipped to learn from history and avoid repeating the mistakes of our past.

The federal government itself has historically commemorated this philosophy. The NPS extolled the virtue of looking to history for lessons of the past in its interpretive text associated with the African Burial Ground National Monument in New York, which is the oldest and largest known excavated burial site in North America for both free and enslaved Africans. See *A Sacred Space in Manhattan*, Nat'l Park Serv. (May 18, 2026), https://www.nps.gov/afbg/index.htm. The following image appears at the site:



This is the Ghanaian symbol of "Sankofa," also depicted by the following image of "a bird which appears to be moving forward while looking back, supporting the idea of incorporating the aspects of the past into the future." *SANKOFA – Learn from the Past*, Nat'l Park Serv. (Nov. 10, 2015), https://www.nps.gov/afbg/learn/historyculture/sankofa.htm.



The term "Sankofa" "literally translates to 'look to the past to inform the future'" and represents the idea that history "should be acknowledged rather than forgotten in order to move forward productively." Id.  There is great wisdom in this West African symbol.  It reflects the principle that by sharing the full story—with the full historical narrative, including perspectives and experiences that have traditionally been stifled—future generations of our country will be empowered to make more informed choices, thereby making our Nation stronger and better. Defendants' removal of interpretive materials directly undermines this compelling public interest.

13

## III.    CONCLUSION

Accordingly, Defendants' Motion for Stay Pending Appeal is **DENIED**.  Defendants are further **DIRECTED** to ensure that when the exhibits are reinstalled, they remain available and visible to the public, subject to lawful changes or modifications.  Defendants may seek limited extensions or exemptions from the Injunction Order, as needed, for specific interpretive material that have already been destroyed or damaged.

**SO ORDERED.**

Dated: June 18, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge