**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

NATIONAL PARKS CONSERVATION ASSOCIATION; AMERICAN ASSOCIATION FOR STATE AND LOCAL HISTORY; ASSOCIATION OF NATIONAL PARK RANGERS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; SOCIETY FOR EXPERIENTIAL GRAPHIC DESIGN; UNION OF CONCERNED SCIENTISTS,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; JESSICA BOWRON, in her official capacity as the Official Exercising the Delegated Authority of the Director,

*Defendants*.

Civil Action No. 1:26-cv-10877

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO DENY DISCOVERY**

# Table of Contents

INTRODUCTION ........................................................................................................ 1

BACKGROUND........................................................................................................ 2

I. The Secretary's Order .......................................................................................... 2

II. The Plaintiffs' Suit ............................................................................................... 3

ARGUMENT ........................................................................................................... 5

I. The Federal Rules of Civil Procedure Entitle Defendants to Take Discovery into Plaintiffs' Standing ........................................................................................ 5

II. Plaintiffs Have Met None of the Procedural Requirements for a Motion for a Protective Order ........................................................................................................ 7

III. Federal Rule of Civil Procedure 56(d) Is a Tool to Oppose Summary Judgment ........ 14

CONCLUSION........................................................................................................ 20

## INTRODUCTION

Plaintiffs have alleged a miscellany of injuries: aesthetic injuries, recreational injuries, informational injuries, diversion of resources, mission frustration, pocketbook injuries, injuries to their relationships with their members, reputational injuries to themselves and their members, and more—all in vague and conclusory terms. To support these claims in their motion for a preliminary injunction, Plaintiffs provided eight declarations. Plaintiffs intend to provide even more declarations to support a motion for summary judgment. But while Plaintiffs acknowledge that *no evidence* of their claimed injuries will be contained within the administrative record, Plaintiffs ask this Court to prevent Defendants from taking *any discovery* into Plaintiffs' standing.

At core, Plaintiffs ask this Court to let them litigate this case based on artifice. Plaintiffs want to supply all the facts relevant to their standing in self-serving declarations and deny Defendants the opportunity to test any of their claims. In support of their motion, Plaintiffs invent a special version of the Federal Rules of Civil Procedure that applies only in APA case: Plaintiffs can cite no Federal Rule of Civil Procedure, no local rule, no commentator, and no case that supports their position. Worse still, a publicly available filing calls into question statements one of Plaintiffs' witnesses made in her declaration in support of Plaintiffs' motion for a preliminary injunction. Although Donna Graves testified that the May 2025 Secretary's Order "forced [her] into early retirement in 2025" (Doc. No. 29-7) ¶ 5, and the Court relied on that statement to find standing and deny Defendants' motion to dismiss (Doc. No. 37) at 16-18; a Federal Election Commission Individual Contribution Report that matches Graves's description says that she has been unemployed since August 5, 2024—nine months before Secretary Burgum issued the Secretary's Order at issue here. Swenson Decl. Ex. 1 at 42, cols. AB, AC & AL, rows 190-94. This discrepancy raises questions about whether Graves and Plaintiffs' other declarants told the

whole truth in their declarations. The Court should reject Plaintiffs' invitation to adjudicate this case on contrived facts under invented rules of procedure. This case, like all cases, should be litigated on a real record, under the real rules, consistent with the Constitution and fundamental fairness. The Court should deny Plaintiffs' motion and direct the parties to meet and confer about an appropriate schedule for jurisdictional discovery.

## BACKGROUND

### I. The Secretary's Order

On May 20, 2025, the Secretary of the Interior issued Secretary's Order 3431, which "implements provisions of" Executive Order 14253. (Doc. No. 31-5) § 1. Section 5 of the Secretary's Order directs the heads of the National Park Service, the Fish and Wildlife Service, the Bureau of Land Management, the Bureau of Indian Affairs, and the Bureau of Reclamation (collectively, the "Land Management Bureaus") to review properties for inappropriate content and to review previous decisions to alter or remove content. Section 6 directs the Land Management Bureaus to post public signs with QR codes that allow visitors to provide feedback on the condition of federal sites, the services provided by the Land Management Bureaus, and the informational material available at federal sites. The Secretary's Order does not order the alteration or removal of any properties. The Secretary's Order, instead, starts a process by which such properties are assessed under the principles laid out in the EO.

In June 2025, Jessica Bowron, Comptroller for the National Park Service ("NPS"), exercising the delegated authority of the Director of NPS, instructed NPS units to conduct reviews under the Secretary's Order and to post signage consistent with the Secretary's Order. (Doc. No. 31-3) ¶¶ 17-18. In July 2025, a "review team of NPS senior management" began to analyze material submitted for review by NPS units and the public for conformance with the Secretary's

Order. *Id.* ¶ 20. "The review team conducts [its] analysis case-by-case, taking into account the context of the submission, the mission and interpretive purpose of the [NPS] Unit or specified exhibit, and any relevant legal or policy considerations." *Id.* "In many cases," the review team finds that the property under review is in conformance with the SO. *Id.* ¶ 21. In other cases, the review team finds the property is not in conformance. *Id.* The process of addressing non-conforming content is also case-specific. In some cases, content may be revised. *Id.* ¶ 24. In other cases, content may be temporarily covered or removed until replacement content is developed. *Id.* In a few cases, interpretive content may be permanently removed. *Id.* Permanent removal is generally due to a confluence of factors, such as the planned retirement date of the object. *Id.*

## II. The Plaintiffs' Suit

Plaintiffs National Parks Conservation Association ("NPCA"), American Association for State and Local History ("AASLH"), Association of National Park Rangers ("ANPR"), Coalition to Protect America's National Parks (the "Coalition"), Society for Experiential Graphic Design ("SEGD"), and Union of Concerned Scientists ("UCS"), are six advocacy organizations interested in the National Park System. (Doc. No. 28) ¶¶ 14-19. Among other things, Plaintiffs allege the Secretary's Order (i) "impedes the organizations' missions"; (ii) "necessitates redirection of resources and forgoing business functions"; (iii) "harms the organizations' relationships with their members"; (iv) "results in lost income for the organizations and their members"; and (v) "inflicts aesthetic, recreational, and informational injuries to the organizations' members." (Doc. No. 70 at 2 (citing (Doc No. 28 ¶¶ 105–30)). Through their suit, Plaintiffs seek vacatur of the Secretary's Order; a permanent nationwide injunction barring Defendants from implementing the Secretary's Order "or any substantially similar order"; and a permanent nationwide injunction directing Defendants to restore "any and all interpretive materials" altered under the Secretary's Order "to

their state as of May 19, 2025." (Doc. No. 28) Prayer for Relief.

On March 18, 2026, Plaintiffs filed a motion for a preliminary injunction supported by declarations from eight witnesses. (Doc. No. 29). Defendants opposed Plaintiffs' motion for a preliminary injunction and moved to dismiss Plaintiffs' Amended Complaint. (Doc. No. 31.) The Court denied Defendants' motion to dismiss on June 4, (Doc. No. 37), and the Court granted Plaintiffs' motion for a preliminary injunction on June 12, (Doc. No. 41.) Defendants promptly filed a notice of appeal of both Orders. (Doc. No. 43.) Three days later, Defendants moved this Court for a stay pending appeal. (Doc. No. 44.) The Court denied that motion. (Doc. No. 51.) Defendants then moved the First Circuit for a stay pending appeal, which the First Circuit granted, holding that Plaintiffs had failed to demonstrate irreparable injury in support of their motion for a preliminary injunction. (Doc. No. 56.) at 4-6.

On July 10, the Court set a scheduling conference for August 18 and directed the parties to submit a schedule outlining the time frames for production of the administrative record, resolving any disputes over the contents of the administrative record, and filing dispositive motions. (Doc. Nos. 57-58.) Because the parties could not agree to a joint schedule, they submitted competing proposals to the Court on August 11. (Doc. Nos. 63-64). The principal disputes between the parties were whether Defendants need to obtain leave of court to serve discovery on Plaintiffs and the time to be allotted for Defendants to take fact discovery into Plaintiffs' standing. (Doc. Nos. 63-64). Consistent with Defendants' position that under Federal Rule of Civil Procedure 26(d) they do not need leave of Court to serve discovery, Defendants mailed their first set of requests for production and first set of interrogatories to Plaintiffs on August 14. (Doc. Nos. 70-2, 70-3).

On Tuesday, August 18, the Court held a scheduling conference. At that conference, the Court was prepared to set the end of fact discovery for December 11, 2026. Aug. 18, 2026 Tr. at

14-15. Plaintiffs requested the opportunity to file a motion to deny Defendants' discovery, and the Court allowed Plaintiffs to file such a motion but did not issue an order limiting Defendants' right to discovery. *Id.* at 18. Immediately following the scheduling conference, Defense counsel emailed Plaintiffs' counsel asking them to confirm receipt of the initial discovery requests and to respond to the requests within 30 days of when they were delivered, as directed in the requests. The next day, the Court issued an Order with initial schedule. (Doc. No. 67). Plaintiffs filed a motion to deny Defendants' jurisdictional discovery on Wednesday, August 26. (Doc. No. 70). On Friday, August 28, the Court stayed discovery pending the resolution of Plaintiffs' motion and directed Defendants to respond within seven days of the Court's order. (Doc. No. 71).

## ARGUMENT

### I. The Federal Rules of Civil Procedure Entitle Defendants to Take Discovery into Plaintiffs' Standing

"In civil cases, it is now beyond dispute that broad discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure." *Outpost24 AB v. Laurel Health Care Co.*, 2022 WL 20595109, at *2 (D. Mass. Oct. 12, 2022) (quotation marks omitted). That is because discovery ensures that civil cases are "fair contest[s] with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Accordingly, "a party is entitled as a general matter to discovery of any information sought if it appears 'reasonably calculated to lead to the discovery of admissible evidence.'" *Degen v. United States*, 517 U.S. 820, 825–26 (1996) (quoting Fed. Rule Civ. Proc. 26(b)(1)).

Federal Rule of Civil Procedure 26 provides the overarching provisions governing discovery in civil cases. Fed. R. Civ. P. 26. "[I]n general, no formal discovery may be undertaken until the parties have conferred pursuant to Rule 26(f) and discussed a discovery plan." Wright & Miller, *1993 Discovery Moratorium Pending Discovery Plan*, 8A Fed. Prac. & Proc. Civ. § 2046.1

(3d ed.). "[T]he Rule 26(d) moratorium" on discovery, however, "does not apply in proceedings exempted from initial disclosure under Rule 26(a)(1)(B)." *Id.* n. 1.[1] That is because Rule 26(d) states that parties to "a proceeding exempted from initial disclosure under Rule 26(a)(1)(B)" need not comply with Rule 26(f) before taking discovery. Fed. R. Civ. P. 26(d)(1). Because "Rule 26 d[oes] not require [a party] to wait until the" Rule 26(f) conference to serve discovery and move to compel in cases exempted from initial disclosures, *Ortiz v. Torgenson*, 857 Fed. App'x 419, 425 (10th Cir. 2021) (vacating denial of motion to compel discovery), "there is no restriction on the commencement of discovery" in cases exempted from initial disclosures. Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2046.1 n.1 (3d ed.) (quoting Committee Note to 2000 Amendment to Rule 26, 192 F.R.D. 340, 386–87).

Because Plaintiffs' APA suit is "an action for review on an administrative record" that is "exempted from initial disclosure under Rule 26(a)(1)(B)," Fed. R. Civ. P. 26(a)(1)(B)(i), (d)(1), Rule 26(d)'s moratorium on discovery does not apply, and the Federal Rules do not restrict when Defendants may serve discovery or move to compel discovery, *see Ortiz*, 857 Fed. App'x. at 425; Wright and Miller, 8A Fed. Prac. & Proc. Civ. § 2046.1 n. 1 (3d ed.). Indeed, under Rule 26, Defendants are "entitled" to "discovery of any information sought if it appears 'reasonably calculated to lead to the discovery of admissible evidence.'" *Degen*, 517 U.S. at 825–26 (quoting Fed. Rule Civ. Proc. 26(b)(1)). The Court's August 28 stay was the first and is the only limitation on Defendants' ability to pursue discovery into Plaintiffs' standing. The Court should deny Plaintiffs' motion, lift the stay, and allow Defendants to pursue discovery into Plaintiffs' standing.

[1] *See also* Exceptions to Rule 26(d)(1), 1 Federal Rules of Civil Procedure, Rules and Commentary § 26:134 ("the Federal Rule of Civil Procedure 26(d)(1) moratorium on pre-discovery conference party-initiated discovery … does not apply in cases exempt from the initial disclosures.").

Although Plaintiffs (at 5-6) argue Defendants must seek "leave of the Court" to pursue discovery into their standing, Plaintiffs cite no case, federal rule, statute, or local rule for this proposition. Plaintiffs imply that *Center for Biological Diversity v. Regan* prevented the government from taking discovery, but that case did not discuss the standards for discovery in APA cases at all. *See generally* 597 F. Supp. 3d 173 (D.D.C. 2022). *Sierra Club v. E.P.A.* required the petitioner to submit evidence of standing where standing was "not self-evident" based on the administrative record but did not discuss the standards for discovery in APA cases. 292 F.3d 895, 896, 900 (D.C. Cir. 2002) (dismissing for lack of standing). *North Carolina Fisheries Association v. Gutierrez* held that Plaintiffs in APA cases may prove standing through extra-record evidence where standing is not "self-evident." 518 F. Supp. 2d 62, 81-82 (D.D.C. 2007). But that case didn't discuss the standard for discovery either. *See generally id.* And while Plaintiffs (at 5-6) agree that a Rule 26(f) conference does not "trigger the beginning of discovery" in APA suits, Plaintiffs invent a new requirement for the beginning of discovery—a motion requesting leave of Court to take discovery—and cite nothing to support this reading of the Rule 26. Plaintiffs' position is directly contradicted by the plain text of Rule 26(d), leading commentators, and precedent. The Court should reject Plaintiffs' lawless position.

## II. Plaintiffs Have Met None of the Procedural Requirements for a Motion for a Protective Order

The proper vehicle for Plaintiffs to ask the Court to limit the scope of Defendants' discovery requests would be "by motion under Rule 26(c)." Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2046.1 n.1 (3d ed.) (quoting Committee Note to 2000 Amendment to Rule 26, 192 F.R.D. at 386–87). Plaintiffs, however, have not met any of the procedural requirements for a motion for a protective order under Rule 26(c) or Local Rule 37.1. Plaintiffs have not objected to specific discovery requests. The parties have not met and conferred about the areas of

disagreement between the parties. Plaintiffs have not identified the specific interrogatories or requests for production to which they object. And Plaintiffs have provided no legal authority relevant to a motion for a protective order. "Plaintiffs' failure to satisfy their obligations under Local Rule 37.1 is" a "sufficient reason, on its own, to deny Plaintiffs' motion. *In re TelexFree Sec. Litig.*, 2024 WL 4729507, at *4 (D. Mass. Nov. 8, 2024) (collecting cases).

Plaintiffs' generalized objections (at 13-14) to Defendants' discovery requests reveal the wisdom behind Local Rule 37.1's requirement to narrow discovery disputes and present them to the Court with specificity. Although Plaintiffs object to several requests for production and one interrogatory, Plaintiffs fail to explain why those requests are objectionable. And even a brief look at Plaintiffs' filings shows that those requests are "relevant" to Plaintiffs' standing and "proportional to the needs of the case." *DMO Norwood LLC v. Kia Am., Inc.*, 691 F. Supp. 3d 252, 257 (D. Mass. 2023) (quoting Fed. R. Civ. P. 26(b)(1)).

| **Discovery Requests to Which Plaintiffs (at 14) Object** | **Relevance to Plaintiffs' Claims of Injury** |
|---|---|
| "All documents related to Plaintiffs' membership from 2020 to the present." | Plaintiffs allege the Secretary's Order has forced them to divert efforts from "membership development efforts." (Doc. No. 28) ¶ 112. Plaintiffs allege the Secretary's Order has led to a decrease in attendance at their events. *Id.* ¶ 118. And Plaintiffs contend the Secretary's Order has "distanc[ed]" Plaintiffs from "some current Park Service employees," who suggest are members or potential members. *See e.g.*, (Doc. No. 29-10) ¶ 21. Whether the Secretary's Order has in fact affected Plaintiffs' memberships or whether those memberships have remained consistent is relevant to whether Plaintiffs can claim these injuries. |
| "All documents and communications related to Plaintiffs' members' reputations," | Plaintiffs have claimed the Secretary's Order harms their members' reputations. (Doc. No. 28) ¶ 106; (Doc. No. 29-1) at 29, 31-33; (Doc. No. 29-7) ¶¶ 28-34; (Doc. No. 29-9) ¶¶ 28-30; (Doc. No. 37) at 16. Evidence of Plaintiffs' members' reputations before the Secretary's Order and evidence of Plaintiffs' members' reputations following the Secretary's Order should reveal |

| **Discovery Requests to Which Plaintiffs (at 14) Object** | **Relevance to Plaintiffs' Claims of Injury** |
|---|---|
| | whether their reputations have in fact been injured by the Secretary's Order. |
| "All documents and communications related to President Trump, the Trump Administration, or any of the Defendants." | Plaintiffs claim Defendants, (Doc. No. 28), and "the Trump Administration" have caused their juries. *See, e.g.*, (Doc. No. 29-7) ¶ 30 ("The Trump administration, through the Secretary's Order, has instilled a culture of fear and self-censorship across national park sites that threatens to remove several interpretive materials"). Documents about the Defendants, President Trump, and the Trump Administration will be relevant to any causal nexus or lack thereof. Further, political disagreements and advocacy against government action one dislikes are not injuries in fact. (Doc. No. 37) at 10. If fact discovery reveals that the real motivation behind Plaintiffs' suit is a political grievance, then Plaintiffs lack standing and the Court must dismiss. |
| "All documents and communications related to the resources Plaintiffs have provided to their members, decisionmakers, and the Public from 2020 to the present," | Plaintiffs allege that they provide "resources" to their members, decisionmakers, and the public. (Doc. No. 28) ¶¶ 15, 19, 107, 112, 122, 125. Plaintiffs also allege that the Secretary's Order has "forced each organization to redirect significant time and resources away from other elements of their work" because they must now "supplement the resources lost or removed" under the Secretary's Order. *Id.* ¶¶ 105-06. (Doc. No. 29-1) at 26. Whether the "resources" Plaintiffs have historically provided have been affected by the Secretary's Order is relevant whether Plaintiffs are injured by the Secretary's Order. And if the resources Plaintiffs now provide because of the Secretary's Order are "lobbying or advocacy" materials, then diverting organizational resources to those ends is not, as the Court has recognized, an injury in fact that supports standing. (Doc. No. 37) at 10. |
| "All documents related to Plaintiffs' revenue from 2020 to the present." | Plaintiff ANPR claims the Secretary's Order has led to "lower attendance at and revenue from our events." (Doc. No. 29-10) ¶ 24; (Doc. No. 29-1) at 33; (Doc. No. 37) at 10. Other Plaintiffs make similar claims. (Doc. No. 29-9) ¶ 26 ("AASLH has been forced to reconsider program and resource offerings, a crucial source of organizational revenue"). Documentary evidence of Plaintiffs' past and present revenues is relevant to whether the Secretary's Order has in fact led to decreased revenue. |

| **Discovery Requests to Which Plaintiffs (at 14) Object** | **Relevance to Plaintiffs' Claims of Injury** |
|---|---|
| "Identify all National Park Service resources Plaintiffs use or have used on an item-by-item basis (including but not limited to resources cited in reports Plaintiffs produce), identify the Plaintiff that used the resource, identify when the Plaintiff used the resource, identify how the Plaintiff used the resource, and identify whether that resource or the Plaintiff's use of the resource has been affected by the Secretary's Order." | "Plaintiffs allege that historically, they regularly relied on interpretive materials at park sites for internal training, events, site visits, and education, and that the removal of these materials has disrupted such activities." (Doc. No. 37) at 12. *See also id.* at 9-10. What materials Plaintiffs use and whether those materials have been affected by the Secretary's Order is relevant to whether Plaintiffs have been injured. *See Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 180 F.4th 348, 352 (1st Cir. 2026). *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the United States*, No. 26A203, 2026 WL 2564318, at *1-*3 (U.S. Aug. 31, 2026). |

While Defendants are happy to meet and confer with Plaintiffs about discovery, at bottom these requests are broad because Plaintiffs claims of injury are broad. Plaintiffs have asserted aesthetic injuries, recreational injuries, informational injuries, diversion of resources, mission frustration, pocketbook injuries, injuries to their relationships with their members, reputational injuries to themselves and their members, and more—all in vague and conclusory terms. Plaintiffs' claims invite discovery and the evidence provided will inform the Court's legal analysis.

Take Plaintiffs' claim of resource diversion. If the Secretary's Order impairs Plaintiffs' "core business activities," that would be an injury in fact. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). If, however, Plaintiffs "voluntarily expend[ed] resources opposing a governmental action through lobbying or advocacy," that would not be an injury in fact. (Doc. No. 37 at 10-11.) How Plaintiffs allocated resources in the past and how Plaintiffs allocate resources today are factual questions, and Plaintiffs should have documents reflecting their past and present allocation of resources. (Doc. No. 70-1) RFP 2.

Similarly, to prove their aesthetic and recreational injuries, Plaintiffs must prove with competent evidence that their "members" have "concrete plans" to see the changed interpretive material in National Park units and will "be directly affected" by the changes to interpretive material in national parks. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-67 (1992) (quotation

marks omitted). Which specific members have aesthetic injuries and what specific interpretive material will cause these injuries turns on what the members' concrete plans are and what interpretive material has been changed. *See Nat'l Parks Conservation Ass'n*, 180 F.4th at 352 (rejecting member's claim of aesthetic injury because "no changes ha[d] been made to interpretive material" in parks the member planned to visit). Because Plaintiffs brought this case and made these allegations of harm, they should be able to easily respond to interrogatories asking them to identify who has been or will be injured and how. (Doc. No. 70-1) ROG 3.

A proper accounting of Plaintiffs injuries and the scope of those injuries is critical because the Court cannot order relief "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Plaintiffs seek vacatur of the Secretary's Order and an injunction restoring all interpretive material changed under the Secretary's Order to the condition the interpretive material was in before the Secretary's Order. But it is hardly self-evident that Plaintiffs can produce members with concrete plans to see every piece of interpretive material that has been changed under the Secretary's Order in the hundreds of National Park Units across the country. Indeed, to date, Plaintiffs have not produced *any member* who can claim such injuries. *Nat'l Parks Conservation Ass'n*, 180 F.4th at 352. The details of Plaintiffs' alleged injuries are essential to determining the proper scope of relief.

Plaintiffs misrepresent how the record review rule applies to APA litigation. To be sure, the "merit of the administrative decision, is to be determined exclusively on the administrative record." *Richards v. Immigr. & Naturalization Serv.*, 554 F.2d 1173, 1177 (D.C. Cir. 1977). *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978) ("[W]hen there is a contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding." (quotation marks omitted)). That is because

"Courts are to determine whether an agency's action was arbitrary or capricious in light of the information it confronted." *Bradley v. Weinberger*, 483 F.2d 410, 415 (1st Cir. 1973). The record review rule also "reflects the recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government and should normally be avoided." *Dep't of Com. v. New York*, 588 U.S. 752, 780–81 (2019) (quotation marks omitted). Accordingly, the Supreme Court has only "recognized a narrow exception" to the rule against *plaintiffs* seeking "extra-record discovery" from the *government*. *Id.* at 781 (quotation marks omitted). But the record-review rule is irrelevant to the government taking discovery into plaintiffs' standing.

The cases Plaintiffs (at 6, 9) rely on are consistent with the principle that the record review rule limits plaintiffs' ability to take discovery from the government. In *Harvard Pilgrim Health Care of New England v. Thompson*, the Court *denied the plaintiffs' request* "to supplement the administrative record." 318 F. Supp. 2d 1, 9 (D.R.I. 2004). In *Common Sense Salmon Recovery v. Evans*, the Court *denied the plaintiffs' motion to compel*. 217 F. Supp. 2d 17, 20 (D.D.C. 2002). In *Rhode Island Hosp. v. Leavitt*, the Court *struck the plaintiff's request* for production as unduly burdensome. 2007 WL 294026, at *2-*3 (D.R.I. Jan. 26, 2007). None of these cases addressed the standard for the government seeking discovery into Plaintiffs' standing.[2]

[2] These well-established limits, however, are applicable to Plaintiffs' contemplated "reciprocal" discovery. Mot. at 6 n.1. Moreover, any "reciprocal" discovery requests would be necessarily irrelevant and disproportionate to the needs of this case, where Defendants will produce an Administrative Record and the only factual issue for discovery is whether Plaintiffs had "standing at the commencement of the case." *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 387 n.1 (1st Cir. 2000). All evidence of Plaintiffs' standing will be in Plaintiffs' possession so there is no need to take discovery from Defendants. It is remarkable for Plaintiffs to suggest they lack sufficient evidence of their injuries while at the same attempting to deny Defendants discovery into said injuries and arguing this case is fit for summary judgment. And, of course, parties may not seek discovery "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)

The record review rule is doubly irrelevant here because Plaintiffs intend to rely on extensive extra-record evidence to support their claims of standing. "The administrative record is that which was before the agency at the time the decision being reviewed was made, and it consists of all documents and materials directly or indirectly considered by agency decision-makers." *Towns of Norfolk & Walpole v. U.S. Army Corps of Eng'rs*, 137 F.R.D. 183, 185 (D. Mass. 1991) (quotation marks omitted). No information about Plaintiffs' missions, alleged diversions of resources, or alleged burdens will be found in the administrative record. Nor will the administrative record include information about Plaintiffs' members' alleged informational harms, recreational harms, aesthetic harms, lost income, chilled expression, or reputational injuries. Consistent with that reality, Plaintiffs submitted eight declarations to support the claims of standing made in their motion for a preliminary injunction. (Doc. Nos. 29-5 to 29-12.) And Plaintiffs represented to the Court that they "anticipate putting forward additional evidence to bolster standing in [their] summary judgment motion and in sworn statements attached to that motion." Aug. 18, 2026 Hrg. Tr. at 5. Plaintiffs cite no case holding the government is precluded from taking discovery into their standing when Plaintiffs put such extra-record evidence at issue.

Fundamentally, Plaintiffs' take-our-word-for-it view of standing turns the Constitution and the American "adversarial system of justice" on its head. *United States v. Foistner*, 2024 WL 3413644, at *2 (1st Cir. July 15, 2024). The Court relies on the "adversaries to generate the information that the judge needs to decide the case faithfully." *Pearson v. Target Corp.*, 968 F.3d 827, 838 (7th Cir. 2020) (quotation marks omitted). Here, "Defendants must be allowed to assess" Plaintiffs' standing, which goes "to the heart of this Court's jurisdiction." *Patient Servs., Inc. v. United States*, 2019 WL 267872, at *11 (E.D. Va. Jan. 18, 2019). Merely relying on Plaintiffs'

self-serving declarations to find that they have standing sufficient for summary judgment would "not comport with standard adversarial practices that undergird the interest of justice." *Id.*

Beyond the general point that the Defendants are entitled to test Plaintiffs' extra-record evidence of harm, there are specific reasons to doubt Plaintiffs' proofs. In support of their motion for a preliminary injunction, Plaintiffs submitted a declaration from Donna Graves a "public historian" living in Berkeley, California. (Doc. No. 29-7) at 1, 15. Graves testified that "because of the Secretary's Order, [she] was forced into early retirement in 2025." *Id.* ¶ 5. *See also* (Doc. No. 37) at 16-18 (relying on Graves's alleged retirement to find standing). A search of the Federal Election Commission's reports for individual contributions returns one result for a Donna Graves living in Berkeley, California. Swenson Decl. Ex 1. That Donna Graves reported being a self-employed "historian" or a "public historian" from July 15, 2004 to February 15, 2023. *Id.* at 29-42, cols. AB, AC & AL, rows 4-188. Starting on August 5, 2024, she reported being "not employed." *Id.* at 42, cols. AB, AC & AL, rows 190-94. Assuming Plaintiffs' witness is the same Berkeley-based, public historian named Donna Graves who made these contributions, then she needs to explain how the May 20, 2025 Secretary's Order "forced" her "into early retirement" nine months before it was issued. This discrepancy calls into question whether Graves and the other declarants told the whole truth in their declarations, and Defendants must be allowed to explore their claims in discovery.

### III. Federal Rule of Civil Procedure 56(d) Is a Tool to Oppose Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Fed. R. Civ. P. 56. Rule 56(b) allows parties to "file a motion for summary judgment at any time until 30 days after the close of all discovery." Rule 56(b)'s flexible timeline for moving for summary judgment is checked by Rule 56(d), which "is intended to safeguard against judges swinging the summary

judgment axe too hastily." *Cortes-Ramos v. Martin-Morales*, 178 F.4th 760, 770 (1st Cir. 2026) (quotation marks omitted). "[T]he prototypical Rule 56(d) case arises when the parties have had the chance to do at least some discovery, but then the summary judgment motion comes before at least one party is satisfied with the discovery process." *Id.* at 772. Under Rule 56(d) a Court may "defer considering the motion [for summary judgment] or deny it"; "allow time to obtain affidavits or declarations or to take discovery"; or "issue any other appropriate order." Fed. R. Civ. P. 56(d).

Rule 56(d) is irrelevant at this stage of the litigation. By its plain language, Rule 56(d) is a tool for "a nonmovant" to oppose summary judgment. Fed. R. Civ. P. 56(d). Plaintiffs have not moved for summary judgment. The issue before the Court is how to set an appropriate schedule that allows Defendants sufficient time to take discovery into Plaintiffs' standing before summary judgment proceedings. Rule 16 governs the standard for the case schedule. And Rule 26 governs the standards for discovery. Plaintiffs' objections to Defendants' discovery requests would be properly litigated in the context of a motion to compel or a motion for a protective order, not an opposition to a motion for summary judgment that has not been filed.

Plaintiffs attempt to improperly heighten Defendants' burden when seeking discovery. Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *DMO Norwood*, 691 F. Supp. 3d at 257 (quoting Fed. R. Civ. P. 26(b)(1)). "Under the liberal standard set forth in [Rule 26], 'information is discoverable if there is any possibility it might be relevant to the subject matter of the action.'" *Hudson-RPM Distributors, LLC v. Bowditch & Dewey, LLP*, 2021 WL 9649662, at *3 (D. Mass. Feb. 12, 2021) (quoting *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001)). Unlike Rule 26's liberal standards, Rule 56(d) requires parties provide an "affidavit or declaration" with the "specified reasons" why additional discovery is necessary. Fed. R. Civ. P. 56(d). That is

because "the prototypical Rule 56(d) case arises when the parties have had the chance to do at least some discovery," are seeking additional discovery, and should have some basis in the initial discovery to seek more. *Cortes-Ramos*, 178 F.4th at 770. Plaintiffs' gambit is to argue Defendants may only seek discovery under Rule 56(d) and then oppose the 56(d) motion by arguing that Defendants—who haven't been able to take any discovery—cannot produce adequate proof in support of a Rule 56(d) motion. Plaintiffs' Catch-22 argument clashes with the Federal Rules of Civil Procedure's commitment to ensuring that civil cases are "fair contest[s] with the basic issues and facts disclosed to the fullest practicable extent." *Procter & Gamble Co.*, 356 U.S. at 682. And Plaintiffs' position distorts the text and structure of Rule 56, which governs only motions for summary judgment, while ignoring Rule 26, which governs discovery.

Forcing Defendants to request jurisdictional discovery through Rule 56(d) would also unduly delay this case. Defendants have propounded written discovery requests tied to claims of injury Plaintiffs have made in their Amended Complaint and in the declarations Plaintiffs filed in support of their motion for summary judgment. With Plaintiffs cooperation, discovery can move quickly and the parties can proceed to summary judgment briefing. Briefing summary judgment, then taking jurisdictional discovery, and then re-briefing summary judgment would squander party and court resources. And altogether denying Defendants "a full and fair opportunity" to take discovery into Plaintiffs standing would be reversible error. *Cortes-Ramos* 178 F.4th at 772.

Although Plaintiffs (at 6-13) suggest that Rule 56(d)—despite its plain language—is the only way Defendants may seek discovery into Plaintiffs standing in APA cases, Plaintiffs cite no cases supporting that proposition. Mot. at 7 n.3 (claiming this is the "recognized framework" but citing no law). Plaintiffs (at 11-13) rely on a hearing transcript from *Amica Ctr. for Immigrant Rts. v. Exec. Off. for Immigr. Rev.* (Doc. No. 70-4.) *Amica*, however, was a totally different case.

The *Amica* plaintiffs filed an emergency motion for a 5 U.S.C. § 705 stay and the Court set an expedited briefing schedule. *Amica Ctr. for Immigrant Rts. v. Exec. Off. for Immigr. Rev.*, 2026 WL 662323, at *1 (D.D.C. Mar. 2, 2026). In the interest of efficiency, the Court converted Plaintiffs' stay motion into a motion for summary judgment. *Id.* at *3. Defendants then opposed Plaintiffs' summary judgment motion under Rule 56(d), *Amica Ctr. for Immigrant Rts. v. Exec. Off. for Immigr. Rev.*, No. CV 26-696 (RDM) ECF 25 (Mar. 4, 2026), and the Court held a hearing on "defendant's Rule 56(d) motion." (Doc. No. 70-4 at 3.) At the hearing, the Court repeatedly stated that testing the sufficiency, accuracy, and veracity of Plaintiffs' declarations is "fair game." *Id.* at 4-5, 7-8. And while the Court did not, given the emergency posture, order jurisdictional discovery, the Court did order the plaintiffs to produce their declarants for live testimony subject to cross examination at a hearing. *Id.* at 33-35, 38-39. Even with its vastly different procedural posture, *Amica* supports the proposition that this case cannot be litigated solely on Plaintiffs' self-serving declarations.

Plaintiffs (at 8 n.4) cite *Montana Env't Info. Ctr. v. Bernhardt* for the proposition that 56(d) imposes a "heavy burden" on the government when it seeks discovery, but Plaintiffs misstate that case's procedural posture: *Bernhardt* involved a motion to dismiss under Rule 12(b)(1) and held "jurisdictional discovery [was] not necessary" because Defendant-Intervenors raised a facial, not a factual, attack on the Complaint. 2020 WL 6948999, at *4 (D. Mont. July 29, 2020), *report and recommendation adopted*, 2020 WL 6042291 (D. Mont. Oct. 13, 2020). Here the parties are preparing for summary judgment, and Defendants intend to contest Plaintiffs' factual statements.[3]

[3] Plaintiffs suggestion (at 9 n.7) that Defendants can argue, "as they did at the motion to dismiss stage," "that any evidence Plaintiffs put forward fails as a matter of law to demonstrate standing" is true but irrelevant. At the motion to dismiss stage, "the court assume[d] the truth of all well-pleaded facts and dr[ew] all reasonable inferences in the plaintiff's favor." (Doc. No. 37) at 7 (quotation marks omitted). The parties are now proceeding to summary judgment, where Plaintiffs will have to prove standing with "evidence," Defendants can dispute Plaintiffs' proofs, and Defendants can challenge the legal sufficiency of whatever facts are genuinely undisputed. *See Defs. of Wildlife*, 504 U.S. at 561 (considering deposition testimony and rejecting standing). The fact that Defendants can make legal

Plaintiffs (at 10) misleadingly quote *Troiano v. Aetna Life Ins.*, 844 F.3d 35 (1st Cir. 2016) to argue Defendants bear a "heavy burden" when seeking jurisdictional discovery. *Troiano* was an ERISA case in which the plaintiff sought additional discovery from the plan administrator. *Id.* at 45-46. *Troiano* was not an APA case in which the government sought jurisdictional discovery.

Plaintiffs' (at 10-11) attempts to distinguish *Patient Services* fail. *First*, Plaintiffs misunderstand *Patient Services*'s procedural history, claiming it differs from this case because the Defendant filed a motion seeking leave to take discovery. Prior to the district court's initial pretrial conference in *Patient Services*, the parties provided the Court with a status report "alert[ing] the Court to a fundamental disagreement that has emerged regarding the need for discovery in this case, which presents a challenge to administrative agency action." *Patient Servs.*, No. 3:18CV16, ECF 30 (E.D. Va. Jun. 25, 2018). The plaintiffs' position was that the case "should be resolved through motions practice without the need for the parties to engage in discovery" while defendants' position was that the case "present[ed] factual questions that cannot be answered without discovery." *Id.* The Court then held a scheduling conference "at which the parties discussed, among other things, the schedule according to which th[e] case should proceed." *Patient Servs.*, No. 3:18CV16, ECF 32 (E.D. Va. July 3, 2018). "Because the parties disagree[d] over the need for discovery, the Court requested that the parties meet and confer and propose a schedule for briefing this issue." *Id.* The Court entered the parties proposed schedule, *Patient Servs.*, No. 3:18CV16, ECF 33 (E.D. Va. July 10, 2018), and Defendants filed a motion for leave to take discovery, not because such a motion is automatically required by the Federal Rules of Civil

arguments relevant to standing in no way affects whether Defendants are entitled to discovery that tests the factual basis for standing. It is common for parties to have both factual and legal disputes at summary judgment and at trial.

Procedure but because the Court had requested briefing. *Patient Servs.*, No. 3:18CV16, ECF 35 (E.D. Va. July 18, 2018). The Court then granted discovery, explaining:

> Discovery here is especially warranted because Patient Services must prove standing. Both parties recognize that the Administrative Record does not, and could not, include the post-decision information necessary to determine what harm Patient Services suffered. Defendants must be allowed to assess any applicable injury, which goes to the heart of this Court's jurisdiction. Patient Services's offer to submit a declaration to prove such harm does not comport with standard adversarial practices that undergird the interest of justice.

*Patient Servs.*, 2019 WL 267872, at *11. Here, as in *Patient Services*, the parties disagreed over the need for jurisdictional discovery, the parties raised that issue at the scheduling conference, and the Court ordered additional briefing. As in *Patient Services*, the Court should allow jurisdictional discovery to proceed because "the Administrative Record does not, and could not, include the post-decision information necessary to determine what harm [Plaintiffs] suffered." *Id.*

*Second*, Plaintiffs (at 11) invent the need to specify "particular, discoverable information" that is "essential to [Defendants'] position" before Defendants can take discovery on standing. *Patient Services* did not impose that requirement on Defendants. *See* 2019 WL 267872. And the defendants in that case merely argued "the Court should allow Defendants to test [the plaintiff's] allegations and gather evidence regarding both (1) the harms, if any, caused by the challenged provisions and (2) the Court's jurisdiction." *Patient Servs.*, No. 3:18CV16, ECF 36 at 12.

*Finally*, Plaintiffs are wrong that the constitutional claim in *Patient Services* changed the Court's jurisdictional discovery analysis. True, the "Court f[ound] limited discovery warranted given the baseline dispute as to how to assess this First Amendment challenge." *Patient Servs.*, 2019 WL 267872, at *11. But the Court separately allowed discovery "because Patient Services

must prove standing" and "the Administrative Record d[id] not, and could not, include the post-decision information necessary to determine what harm Patient Services suffered." *Id.*[4]

Plaintiffs (at 11-13) abandon legal argument for the claim that jurisdictional discovery is rarely taken in APA case. In the mine-run of APA cases, the plaintiffs are "directly regulated by" an agency "rule" or order and "ha[ve]been injured by it." *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022). In those cases, the plaintiff's standing is "self-evident." *Sierra Club*, 292 F.3d at 900. Here, however, neither Plaintiffs nor their members are subject to the Secretary's Order, which only governs "the internal management" of the Department of the Interior. (Doc. No. 31-5) § 7. Plaintiffs alleged injuries are from secondary effects of the Secretary's Order. Whether those injuries exist is not self-evident and thus require factual development. *Sierra Club*, 292 F.3d at 900. While not the norm, the government takes discovery when APA cases warrant discovery. *See Patient Servs.*, 2019 WL 267872, at *11. *Division 80 LLC v. Garland*, 22-cv-148 ECF 52 (S.D. Tex. July 12, 2022) (granting the government discovery into the plaintiff's standing). *Cf. Defs. of Wildlife, Friends of Animals & Their Env't v. Lujan*, 911 F.2d 117, 118 (8th Cir. 1990) (describing "discovery on standing" in challenge to agency rulemaking), *rev'd, Defs. of Wildlife*, 504 U.S. at 564 (considering deposition testimony and rejecting claims of aesthetic injury). "[T]his is one of the very rare APA cases in which jurisdictional discovery is warranted." *Amica*, 2026 WL 662323, at *2.

## CONCLUSION

The Court should deny Plaintiffs' motion and direct the parties to meet and confer about a reasonable schedule for jurisdictional discovery.

[4] Plaintiffs' attempt (at 11 n.8) to dismiss *Patient Services* as an "unreported, out-of-circuit decision" falls flat. *Patient Services* is directly analogous to this case. *See Patient Servs.*, 2019 WL 267872. And Plaintiffs fail to support their rhetoric about how "remarkable" the Defendants' position is with any legal authority whatsoever.

Dated: September 4, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Ian M. Swenson*
Ian M. Swenson
Counsel
Energy and Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, District of Columbia 20530
(202) 532-5139
Ian.Swenson@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on September 4, 2026.

/s/ Ian M. Swenson
Ian M. Swenson